FILED

1  Dan Stormer, Esq. [S.B. #101967]
   Anne Richardson, Esq. [S.B. #151541]
2  Cindy Pánuco, Esq. [S.B. #266921]
   HADSELL STORMER KEENY
3       RICHARDSON & RENICK, LLP
   128 North Fair Oaks Avenue
4  Pasadena, California 91103-3645
   Telephone:  (626) 585-9600
5  Facsimile:  (626) 577-7079

6  Attorneys for Plaintiff
   DANA APUZZO
7

8

2012 MAR -1  PM 3: 34

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY:_____

8

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11  DANA APUZZO                      CV 12     Case No. 1768  CBM   (DTBx)

12           Plaintiff,              1.  **PREGNANCY**
                                         **DISCRIMINATION AND**
13       vs.                             **HARASSMENT (TITLE VII)**
                                     2.  **RETALIATION (TITLE VII)**
14  GLEN IVY HOT SPRINGS, a          3.  **VIOLATION OF THE FMLA**
    corporation; JIM ROOT, an individual;  4.  **PREGNANCY**
15  CRISTEN Stier, an individual; and        **DISCRIMINATION AND**
    DOES 1 through 10; inclusive,            **HARASSMENT (FEHA)**
16                                   5.  **MARITAL STATUS**
             Defendants.                 **DISCRIMINATION AND**
17                                       **HARASSMENT (FEHA)**
                                     6.  **RETALIATION FOR**
18                                       **COMPLAINTS OF**
                                         **HARASSMENT AND**
19                                       **DISCRIMINATION (FEHA)**
                                     7.  **RETALIATION AND**
20                                       **INTERFERENCE WITH**
                                         **PROTECTED LEAVE RIGHTS**
21                                       **UNDER THE CFRA**
                                     8.  **FAILURE TO PREVENT**
22                                       **HARASSMENT AND**
                                         **RETALIATION**
23                                   9.  **WRONGFUL CONSTRUCTIVE**
                                         **DISCHARGE**
24                                   10. **INTENTIONAL INFLICTION**
                                         **OF EMOTIONAL DISTRESS**
25

26                                   **DEMAND FOR JURY TRIAL**

27

28

COMPLAINT FOR DAMAGES

1    Plaintiff Dana Apuzzo brings this action against defendants Glen Ivy Hot Springs,

2   Jim Root, an individual, Cristen Stier, an individual, and DOES 1 through 10 for general,

3   compensatory, punitive and statutory damages; prejudgment interest, costs and attorneys'

4   fees; and other appropriate and just relief resulting from defendants' unlawful and

5   tortious conduct, and as grounds therefore alleges:

6                                **JURISDICTION AND VENUE**

7        1.    This court has jurisdiction under 28 U.S.C §1331 (federal question).  Venue

8   is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because all

9   of the acts, events and omissions giving rise to the action occurred in this District in the

10  County of Riverside, CA.  Plaintiff's state law claims for relief are within the

11  supplemental jurisdiction of the Court, as authorized by 28 U.S.C. § 1367.

12                                        **PARTIES**

13       2.    Plaintiff Dana Apuzzo ("Ms. Apuzzo") is a resident of San Bernardino

14  County, California.  Plaintiff is a female of thirty-one years of age.

15       3.    Defendant Glen Ivy Hot Springs, ("Glen Ivy") is a corporation conducting

16  business in the State of California and County of Riverside.

17       4.    Defendant Jim Root, ("Root"), on information and belief, is presently a

18  resident of Riverside County.  At all relevant times herein, defendant was employed by

19  Glen Ivy as the Chief Executive Officer/President.

20       5.    Defendant Cristen Stier, ("Stier"), on information and belief, is presently a

21  resident of Riverside County.  At all relevant times herein, defendant was employed by

22  Glen Ivy as either the Director of Finance until she was promoted to the Chief Financial

23  Officer in or around the Spring of 2011.

24       6.    Plaintiff is ignorant of the true names and capacities of defendants sued

25  herein as Does 1 through 10, inclusive, and therefore sues these defendants by such

26

27

28

                                            1

1   fictitious names and capacities. Plaintiff will amend this complaint to allege their true

2   identities when ascertained. Plaintiff is informed and believes and on that basis alleges,

3   that each fictitiously named defendant is responsible in some manner for the acts and

4   failures to act herein alleged, and that Plaintiff's injuries as herein alleged were legally

5   caused by the conduct of each such defendant.

6        7.    Plaintiff is informed and believes and thereupon alleges that, at all times

7   material herein, each of the Defendants was the agent or employee of, and/or working in

8   concert with, his/her co-Defendants and was acting within the course and scope of such

9   agency, employment and/or concerted activity. Plaintiff alleges that to the extent certain

10   acts and omissions were perpetrated by certain Defendants, the remaining Defendant or

11   Defendants confirmed and ratified said acts and omissions.

12        8.    Plaintiff is informed and believes and thereupon alleges, that at all times

13   material herein each Defendant was dominated and controlled by his/her co-Defendant

14   and each was the alter-ego of the other.

15        9.    Whenever and wherever reference is made in this complaint to any act or

16   failure to act by a Defendant or Defendants, such allegations and references shall also be

17   deemed to mean the acts and failures to act of each Defendant acting individually, jointly

18   and severally.

19                   **FACTUAL ALLEGATIONS**

20   *Glen Ivy Background*.

21        10.    Defendant Glen Ivy Hot Springs and at all relevant times herein, operated a

22   resort, as well as day spas throughout Southern California in Brea, Valencia, and at the

23   site of their corporate headquarters in Corona, CA. Glen Ivy serves over 250,000

24   patrons annually and employs about 450 people in Southern California.

25        11.    Defendant Jim Root became the President of Glen Ivy in February 2008. He

26   was also later named Chief Executive Officer ("CEO"). As President and CEO, Root

27   oversaw Glen Ivy's operations. Ms. Apuzzo had a good working relationship with Root

28   through the end of 2010.

COMPLAINT FOR DAMAGES

12.     Defendant Cristen Stier was hired as the Director of Finance at Glen Ivy in or about May 2008.  Stier's job responsibilities included overseeing the finance department and all of Glen Ivy's budgetary and financial matters.  In or around the Spring of 2011, Stier was promoted by Glen Ivy to the position of Chief Financial Officer.  As CFO, Stier required the heads of all Glen Ivy departments to report directly to her – including the head of Glen Ivy's version of a human resources department - Jane Durling.

***Dana Apuzzo Has a Long History of Positive Performance.***

13.     Plaintiff Dana Apuzzo is a vibrant thirty one year-old, young woman, who together with her partner and fiancé, runs a household and raises a now 15-month old baby girl.  Ms. Apuzzo began her career at Glen Ivy in November 2002 as an Esthetician in the Brea facility.  Approximately one  year later she was promoted to Lead Esthetician, then promoted again in 2005 to the supervisory position of Skin Care Trainer Educator.  In 2009 she was promoted yet again, reaching the position of Corporate Skin Care Education Coordinator.  As Glen Ivy's Corporate Skin Care Education Coordinator, Ms. Apuzzo trained all of Glen Ivy's estheticians in the provision of services, and driving sales of products used for services such as facials, waxing, manicures, and pedicures.  She worked primarily out of the Brea, CA location and only occasionally worked in the headquarters office of Glen Ivy in Corona.

14.     Throughout Ms. Apuzzo's employment with Glen Ivy prior to her pregnancy, she was consistently praised by her supervisors and peers who evaluated the training sessions she conducted.  Defendants Stier and Root verbally praised Ms. Apuzzo for her exemplary work.  The written performance evaluations Ms. Apuzzo received over her nearly nine year career at Glen Ivy also demonstrate nothing less than positive marks.

/ / /

/ / /

/ / /

3

COMPLAINT FOR DAMAGES

*The Hostile, Harassing, and Discriminatory Work Environment for Pregnant Women at Glen Ivy.*

15.     Ms. Apuzzo is informed, believes, and thereon alleges that Glen Ivy, Stier, and Root discriminated, harassed, and retaliated against other employees and pregnant women at Glen Ivy.

16.     Indeed, in or around August 2009, Ms. Apuzzo witnessed Stier verbally threaten physical harm to a colleague named Julie Peirce.  Ms. Peirce filed suit for among other things, assault, retaliation for whistleblowing, and wrongful constructive discharge in violation of public policy.  Before Ms. Peirce's suit was filed, Ms. Apuzzo gave Ms. Peirce a statement detailing an incident in which she heard Stier make a threatening comment with words to the effect that she would run over Ms. Peirce over with her car if she saw her in the parking lot.  Ms. Apuzzo is informed, believes, and thereon alleges, that Stier was never disciplined for threatening violence against a colleague.

*Dana Apuzzo Becomes Pregnant in April 2010, and Glen Ivy Begins Harassing Her and Discriminating Against Her on the Basis of her Pregnancy and Marital Status.*

17.     Ms. Apuzzo was informed by her physician in early April 2010 that she was pregnant.  After learning of her pregnancy, Ms. Apuzzo informed first Stier on or around April 22, 2010, and then Root, on or around the same day.

18.     Ms. Apuzzo's happy news was not received well by Stier.  Stier confronted Ms. Apuzzo with inappropriate questions and comments which were irrelevant to Ms. Apuzzo's ability to carry out her responsibilities throughout her pregnancy, or following the birth of her child.  Stier asked Ms. Apuzzo who would take care of her baby when it was time to return to work after taking maternity leave, and pointedly questioned what Ms. Apuzzo would do if her baby got sick.  She also made inappropriate comments in a tone that made Ms. Apuzzo very uncomfortable and made her fear the loss of her job.  Stier said such things as: "Just wait 'til you see that face that you have to leave every day, things change" and "Did you know women who come back from maternity leave

COMPLAINT FOR DAMAGES

1    come back 50% less the employee?" Additionally, while discussing the travel Ms.

2    Apuzzo sometimes had to do for work-related purposes, Stier commented that, "You

3    probably won't want to travel anymore."

4         19.    Ms. Apuzzo was nearly in tears after enduring Stier's questions, and

5    demeaning comments. This was exacerbated by what Stier said next. In the same

6    conversation in which Stier questioned Ms. Apuzzo's ability to return to work as a fully

7    functional employee after the birth of her child, Stier also began to discuss the job status

8    of another recently pregnant employee –Dina Prak. Stier told Ms. Apuzzo that because

9    Ms. Prak had missed many days of work due to being sick during her pregnancy, her

10    position at Glen Ivy, "was not secure." Ms. Apuzzo immediately felt that this was a

11    warning to her that her job would be jeopardized if her pregnancy resulted in missed

12    days of work. The moment she walked away from this encounter with Stier on April 22,

13    2010, Ms. Apuzzo felt sick to her stomach.

14         20.    After her April 22, 2010 conversation with Stier, Ms. Apuzzo next went to

15    tell Root that she was pregnant. After Ms. Apuzzo relayed to him the news of her

16    pregnancy, Root inappropriately asked Ms. Apuzzo if she was planning to get married in

17    light of her pregnancy. He then sang a line from the song "Single Ladies" by the artist

18    Beyonce Knowles, "If he likes it then he better put a ring on it" and waived his ring

19    finger hand in the air, just as the singer is known for doing in the music video which

20    accompanies the song. Feeling ashamed, Ms. Apuzzo began to explain to Root that she

21    and her current partner had each been previously married and did not want to rush into

22    another marriage. Root then said he also had a "talk" with other women at Glen Ivy who

23    were pregnant and not married. At the time, two other women at Glen Ivy were pregnant

24    and unmarried – Katherine Helock and Jodee Newbeur. All of Root's comments made

25    Ms. Apuzzo feel as though he strongly disapproved of her pregnancy out of wed-lock.

26         21.    A few days later when she was working at the Brea location, she was

27    brought to tears again when she relayed to her colleagues Rachel Klemann and Jason

28    Szklany, the details of her conversation with Stier. In tears, Ms. Apuzzo explained to

5

1  Ms. Klemann and Mr. Szklany what Stier said to her about the worth of women in the
2  workplace after returning from maternity leave, Stier's pointed questions, how she felt
3  demeaned and humiliated, and that she feared that the news of her pregnancy might lead
4  to losing her job.

5  ***Dana Apuzzo's Maternity Leave***

6        22.   On October 4, 2010 Ms. Apuzzo began her maternity leave.  She had
7  complications due to her pregnancy which required her to begin her disability leave
8  immediately and unexpectedly on October 4, 2010.

9        23.   On or about October 4, 2010 Ms. Apuzzo filed the proper paperwork with
10 Glen Ivy requesting her  Pregnancy Disability Leave benefits which run concurrently
11 with her rights to leave under the Family and Medical Leave Act ("FMLA").

12       24.   On November 24, 2010, Ms. Apuzzo gave birth to a premature but healthy
13 baby girl.

14       25.   On or about January 31, 2011 Ms. Apuzzo filed the proper paperwork with
15 Glen Ivy requesting an additional 12 weeks of leave for bonding time with her baby
16 under the California Family Rights Act ("CFRA").  Ms. Apuzzo planned to remain on
17 full time leave through March 15, 2011 and to take the remaining 6 weeks of CFRA
18 leave on an intermittent basis after her return to Glen Ivy.

19 ***Ms. Apuzzo is Demoted, Retaliated Against, Discriminated Against and Harassed.***

20       26.   Ms. Apuzzo returned to work as planned on March 15, 2011.  On or around
21 March 17, 2011 just two days after her return, Stier rewarded her loyalty and nearly nine
22 years of service by summarily demoting her.  Couching it as a promotion, Stier offered
23 Ms. Apuzzo the job of "Salon Director" in Corona at a rate of pay of $62,000 per year.

24       27.   In the work-shortened year of 2010 Ms. Apuzzo was on pace to earn more
25 than $70,000, and had earned nearly $68,320 in 2009.  Her commissions were generally
26 in the range of $2,000-$3,000 each month in addition to her base salary of $40,000 as the
27 Corporate Skin Care Education Coordinator.  If she accepted the Salon Director position,
28 she would earn no more than her base salary of $62,000 and a meager commission.  Ms.

1  Apuzzo lacked the training and experience required of the Salon Director position, and

2  the position would not provide the same commission potential as the Corporate Skin

3  Care Education Coordinator – requiring more work for less pay.

4      28.    From the outset, Ms. Apuzzo told Stier that she was uneasy about accepting

5  the new position, and asked her for time to consider the offer.  Nonetheless, on March

6  26, 2011, before Ms. Apuzzo had officially declined the position, Stier began having the

7  Operations department at Glen Ivy copy Ms. Apuzzo on emails related to the new role.

8  On March 29, 2011 Todd De Leon sent an email requesting that management pass along

9  the Salon Director responsibilities to Ms. Apuzzo, notwithstanding Ms. Apuzzo's never

10  informing anyone that she had agreed to take on the new position.

11      29.    On March 29, 2011 Ms. Apuzzo reluctantly informed Stier that she had still

12  not accepted the Salon Director position, and asked for more information about

13  compensation in that position.  Ms. Apuzzo feared that outright rejecting the position

14  would mean that she would have no job at all at Glen Ivy.  The same day, Ms. Apuzzo

15  also emailed Todd De Leon and other staff about needing training before she began to

16  take on any of the Salon Director's responsibilities.  In the days that followed Ms.

17  Apuzzo became overwhelmed, and extremely anxious about being given responsibilities

18  for which she was not trained.  She felt she was being set up to fail in the new position

19  and expressed these concerns to Todd De Leon.

20      30.    On March 31, 2011 Ms. Apuzzo emailed Mr. De Leon and inquired whether

21  she had the option to remain in her position as Skin Care Education Coordinator if she

22  did not accept the Salon Director position.  Mr. De Leon verbally responded to Ms.

23  Apuzzo that she did have the option to remain in her previous role, but asked her to take

24  more time to think about it.

25      31.    Still holding out hope that she would be able to remain in the job in which

26  she thrived before her maternity leave, on or around April 2, 2011 Ms. Apuzzo emailed

27  Mr. De Leon and asked to review the job description for the Skin Care Education

28  Coordinator Position she held before her maternity leave.

32.    Ms. Apuzzo then personally spoke with Mr. De Leon about the angst she was feeling and pleaded with him to tell Stier that she did not want the new position, had not accepted the new position and was not trained for the work she was being assigned. Mr. De Leon expressed to her he was equally frustrated because despite his best efforts to advocate on her behalf, Root and Stier maintained that Ms. Apuzzo would have no choice but to take the Salon Director job.  Indeed, Root instructed Mr. De Leon to inform her that "she may not have an option" other than the Salon Director position.  In order to stall what she viewed as the set-up which would lead to her termination, Ms. Apuzzo asked Mr. De Leon to convey to Stier and Root that she remained undecided.

33.    In the days that followed, Stier repeatedly hounded Ms. Apuzzo concerning her decision, informing her that it was imperative that she accept what was essentially a demotion.  On one occasion under the oak tree in the lunch area in early April 2011, Stier confronted Ms. Apuzzo in the presence of the staff from the Accounting Department and ordered, "Will you just accept the damn position already?"

34.    When Stier's direct order to accept the position went unheeded, Stier approached Ms. Apuzzo and asked her to lunch to discuss the "promotion" opportunity. Ms. Apuzzo felt uneasy given all the pressure Stier had been exerting, but reluctantly agreed.  During their meal Stier again attempted to persuade Ms. Apuzzo to take the Salon Director position, never clarifying any of the following:  whether the Skin Care Education Coordinator position was still an option for her; what the amount of her compensation would be taking into account expected commissions; or why she was being demoted.  Ms. Apuzzo expressed her concerns that the Salon Director position did not play to her strengths.  In truth, she feared she was being purposefully set up to fail.

35.    Upon returning from lunch, Mr. De Leon informed Ms. Apuzzo that she would be permitted to remain in the Skin Care Education Coordinator position. However, he also said that Stier relayed to him that Ms. Apuzzo expressed interest in accepting the Salon Director position –notwithstanding Ms. Apuzzo's clear reservations about taking the position.

8

36.     Stier's haphazard efforts to force Ms. Apuzzo to accept the Salon Director position created confusion and uneasiness throughout the staff at Glen Ivy, and left Ms. Apuzzo uncertainty as to her job status.

37.     On or around April 5, 2011 Mr. De Leon informed Ms. Apuzzo that Root verbally asserted that Ms. Apuzzo did not have the option to remain in the Corporate Skin Care Education Coordinator position.  Root asked Mr. De Leon to obtain a written refusal to take the Salon Director position from Ms. Apuzzo.

38.     April 6, 2011 turned out to be a day of more miscommunication, confusion, and haphazard efforts to force Ms. Apuzzo to take the Salon Director Position.  On April 6, 2011 Stier told Ms. Apuzzo that if she accepted the Salon Director position, Ms. Apuzzo's base salary would be only $60,000, and that the $62,000 offer she initially made was no longer on the table.  Ms. Apuzzo asked Stier to put this in writing and again asked whether she had the option to remain in the Corporate Skin Care Education Coordinator position.  Ms. Apuzzo did not get a straight answer.  On this same day Ms. Apuzzo was again asked by Todd De Leon to formally decline the Salon Director position in writing if she did not want to accept it.  Mr. De Leon candidly informed Ms. Apuzzo that while he believed the Salon Director position was wrong for her, Root and Stier were pressuring him to force Ms. Apuzzo to accept it.  Ms. Apuzzo told Mr. De Leon that she was officially declining the offer to step into the Salon Director position, but felt uncomfortable declining in writing.  She feared it may be viewed as a resignation since she remained unsure about whether she'd be able to remain in the Education Coordinator position.

39.     On April 6, 2011 at 3:27 p.m. Stier sent Ms. Apuzzo an email expressing her disappointment that Ms. Apuzzo had declined the Salon Director position and that Stier was certain that Ms. Apuzzo would continue in her Coordinator position "with much success."  Given this email from Stier, Ms. Apuzzo believes and thereon alleges, that Mr. De Leon told Stier she formally declined the position.

/ / /

9

40.     Stier clearly acknowledged in this email her knowledge that Ms. Apuzzo refused the Salon Director position.  Nonetheless, without first getting Ms. Apuzzo's agreement to fill the position on an interim basis, Stier forced her into the position.  Eight minutes after her email acknowledging that Ms. Apuzzo would remain in the Education Coordinator role, at 3:35 p.m. on April 6, 2011, Stier sent a company-wide email informing the entire company that Ms. Apuzzo would "temporarily" fill the Salon Director role until a permanent candidate was hired.  In the e-mail, Stier thanked Ms. Apuzzo for stepping in to cover the position until the right candidate was found.  However, Ms. Apuzzo never agreed to do such a thing, still had no training for the position and it seemed would be expected to carry out the duties of two employees.

***Ms. Apuzzo Becomes Ill and Formally Complains About the Harassment, Discrimination and Retaliation to Glen Ivy.***

41.     Under the stress of learning a new job and the uncertainty of her career at Glen Ivy, Ms. Apuzzo became sick.  She was nervous, anxious and felt pressured to do the work of the Salon Director in addition to her Education Coordinator responsibilities, lest she lose her job completely.  She reached a point where she was physically unable to bring herself to go to work to face the pressures.  She called in sick on April 7, 2011 and sent Stier an email also informing her that she was sick and would not be going to work.

42.     Left with no other option, Ms. Apuzzo wrote a letter of complaint to the Human Resources Department at Glen Ivy on or around April 7, 2011.  She formally set forth the discriminatory, harassing comments and adverse, retaliatory actions taken against her by Stier as a result of her taking maternity leave and which were making her physically ill.  In her letter, Ms. Apuzzo reported that she had been harassed, discriminated, and retaliated against on account of her pregnancy, maternity leave, and for providing a witness statement to a colleague Julie Peirce regarding threats of violence Stier made against Ms. Peirce.  Ms. Apuzzo asked that an investigation be conducted, and asked that she be permitted to remain in the position of Corporate Skin Care Education Coordinator pending the results of the investigation.  Fearing she may face

COMPLAINT FOR DAMAGES

1   further retaliation, her letter explained that if she were ordered to remain in the Salon

2   Director position she would do so, but that she believed being ordered to do so would

3   constitute retaliation.

4       43.    On April 11, 2011 Ingrid Magana responded to Ms. Apuzzo in an email

5   which acknowledged receipt of her complaint and ensured Ms. Apuzzo that no

6   retaliation would occur as a result of her filing a complaint, and that no retaliation by

7   management, employees or co-workers would be tolerated.

8       44.    On April 12, 2011 Root responded to her letter of complaint with an email

9   acknowledging receipt of her letter and promising that he would "lead the investigation"

10   concerning her allegations.  He asked Ms. Apuzzo to schedule a meeting with him

11   immediately.

12   ***Ms. Apuzzo Is Further Retaliated Against for Complaining about Harassment,***

13   ***Discrimination and Retaliation.***

14       45.    On April 13, 2011 Ms. Apuzzo arrived at Glen Ivy to find that all of her

15   belongings had been moved from the skin care department in the Spa Salon (where her

16   office had historically been), to a cubicle in the reception area near the front of Glen

17   Ivy's corporate office.  On April 13, 2011 she was told that she 1) would no longer work

18   in the skin care salon (department), 2) would now be directly supervised by Ingrid

19   Magana who worked in the Employee Development Department (Glen Ivy's equivalent

20   of a Human Resources Department) and 3) would work out of a new cubicle away from

21   the skin care salon (department).  Root and Stier singled her out to sit in a cubicle away

22   from her department and colleagues.  She felt ostracized and humiliated and as though

23   she were being punished for voicing concern that she was being harassed, discriminated

24   and retaliated against.  That same day, Ms. Apuzzo visited her physician and he treated

25   her for anxiety and referred her to counseling.  Alisha Bolsinger, Ms. Apuzzo's

26   colleague, later told her that she was directed to relocate Ms. Apuzzo's belongings while

27   Ms. Apuzzo was out of the office, and felt bad about invading her personal work space.

28

COMPLAINT FOR DAMAGES

*Not Surprisingly, Glen Ivy's "Investigation" Into Ms. Apuzzo's Complaints Reveals No Discrimination or Harassment.*

46.   On April 14, 2011, Jim Root told Ms. Apuzzo he needed to begin his investigation.  Without notice, he sent her home to gather her supporting documentation.  When Ms. Apuzzo returned to Glen Ivy, Root was gone and so his investigation was left for another day.

47.   On April 15, 2011 Ingrid Magana sent a follow up email to Ms. Apuzzo, reassuring that no retaliation would occur.

48.   On or around April 20, 2011, Root finally met with Ms. Apuzzo to question her regarding her April 7, 2011 complaint.  Root didn't question Ms. Apuzzo regarding the harassing and discriminatory comments she reported that Stier made.  He also didn't ask Ms. Apuzzo for the names of any witnesses.  When Ms. Apuzzo questioned whether her pay would remain at the same level as before her maternity leave, he flatly informed her that it was an issue that would be determined after the completion of his "investigation."  Based on that, Ms. Apuzzo's understanding at the time was that she would be paid only for hours worked and would not receive any commissions during this time.  Further she had been deprived of the opportunity to earn commissions for services and sales because from March 15 through April 23, she was not permitted to provide services to any clients which requested her.

49.   Since Root had not asked her for the names of any witnesses, Ms. Apuzzo sent Root an email on the heels of their meeting.  On April 20, 2011 she provided him the names of two witnesses; two of her co-workers whom she had contacted soon after Stier made the discriminatory and harassing comments to her – Rachel Klemann and Jason Szklany.  Jim Root responded in a belittling email, erroneously claiming that he had repeatedly asked Ms. Apuzzo for additional information and she had not given it.

50.   On April 21, 2011 Ms. Apuzzo emailed Root to clarify why she emailed him names of witnesses.  She wrote, "I don't remember you specifically asking me about inappropriate comments made by Cristen, or specifically asking me if there were any

COMPLAINT FOR DAMAGES

1 witnesses." Ms. Apuzzo further clarified that Root had told Ms. Apuzzo that whether

2 her ability to earn commissions would be reinstated, would be determined at the

3 conclusion of Root's investigation.

4    51.   On April 22, 2011, Root sent a memo to Ms. Apuzzo in which he

5 summarized the findings of his investigation. Root found Ms. Apuzzo's complaints to

6 be without merit, finding that Stier did not discriminate or retaliate against Ms. Apuzzo.

7 In coming to his conclusion, Root claims he considered among other things, "Cristen

8 Stier's written response." Ms. Apuzzo was never provided a copy of Stier's written

9 response, nor did Root indicate that Stier was interviewed, trained about harassment and

10 discrimination, or disciplined.

11    52.   Notably, Root's memorandum indicated "I do not view the statements you

12 attribute to Ms. Stier a year ago as showing prejudice against female or pregnant

13 employees. Ms. Stier's statements are more reasonably viewed as supportive comments

14 by a working mother to a prospective working mother." He didn't claim that Stier

15 denied making the comments. Root further offered Glen Ivy's recent "organizational"

16 changes as reasoning for the pressure put on Ms. Apuzzo to accept the Salon Director

17 position. He made no mention of interviewing any other witnesses.

18 **Following Glen Ivy's Investigation, the Harassment, Retaliation, and Discrimination**

19 **Continued.**

20    53.   Over the course of the next few months, Ms. Apuzzo's workspace was

21 relocated and her belongings were moved without her consent on four additional

22 occasions. During the same time period, she was given a hodge podge of work

23 assignments to perform and never fully returned to the Corporate Skin Care Education

24 Coordinator position. Her role at Glen Ivy was not clearly defined. She was generally

25 relegated to performing administrative duties at her location and occasionally performing

26 work at the other Glen Ivy locations. She was given assignments by Stier, but they came

27 through Ingrid Magana. Stier, through Magana, assigned her to prepare lesson plans, put

28 together training materials, and perform new hire training. Her work had never before

13

COMPLAINT FOR DAMAGES

1  been so closely watched and reviewed as it was during this time period by Stier and

2  Magana.

3      54.    Also in April 2011 Ms. Apuzzo was removed as the lead trainer on several

4  programs and was replaced without explanation by other employees with little

5  experience.

6      55.    It was common during this time for Magana and Stier to stand near Ms.

7  Apuzzo at her workstation saying nothing, or hover just behind her.  Ms. Apuzzo felt

8  harassed and intimidated by Stier's behavior.

9      56.    During this time, Ms. Apuzzo's hours were also reduced from forty or more

10  hours per week to thirty to thirty-five hours.  Ms. Apuzzo was also informed by Magana

11  that she was no longer needed in the Valencia location.  This further reduced her ability

12  to earn commissions from services and sales at that location.

13      57.    In or around May 2011, Ms. Apuzzo became devastated when she realized

14  the stress and anxiety she was feeling was affecting her ability to breast feed her baby.

15  By the end of May, she was no longer able to nurse her daughter.

16      58.    In June 2011 Ms. Apuzzo was inexplicably prevented from attending

17  several internal and outside training programs and events put on by vendors.  She was

18  informed by Ingrid Magana that she would not be attending the presentations as she had

19  always done in the past.  Instead Glen Ivy sent employees who were less qualified in her

20  place.

21      59.    In July and August 2011 Ms. Apuzzo had been asked to lead a national

22  esthetician certification program.  She progressed well on this program and was

23  complimented on her work routinely by her immediate supervisors Magana and Stier.

24      60.    In August 2011 Stier began incessantly badgering Ms. Apuzzo to return a

25  laptop computer that Ms. Apuzzo had been issued on a permanent basis, to prepare

26  training presentations.  Without any explanation, she informed Ms. Apuzzo that she

27  could no longer keep the laptop on a full-time basis, but would instead need to "check it

28

14

1 out" as needed, and "check it back in" when she was done with whatever project

2 required its use.

3 ***In the Fall of 2011 Ms. Apuzzo Discovers She has Been Improperly Paid and***

4 ***Formally Complains While also Filing Complaints with the Department of Fair***

5 ***Employment and Housing and the Equal Employment Opportunity Commission.***

6    61.    On or about August 16, 2011 Ms. Apuzzo sent an email to Root and Stier in

7 which she pointed out that she had recently reviewed her payroll records and found that

8 during the years since 2009 she had been improperly underpaid according to Glen Ivy's

9 commission schedule.

10    62.    On August 25, 2011 Stier responded with a memorandum to Ms. Apuzzo in

11 which she admitted that Ms. Apuzzo had in fact been underpaid. Attached hereto as

12 Exhibit "2" is a true and correct copy of the letter from Stier to Ms. Apuzzo regarding

13 unpaid commissions.

14    63.    On August 29, 2011, Ms. Apuzzo timely signed and filed a Complaint with

15 the Department of Fair Employment and Housing ("DFEH") which simultaneously filed

16 a Charge with the Equal Employment Opportunity Commission. Attached hereto as

17 Exhibit "1" is a true and correct copy of the DFEH Complaint filed by Ms. Apuzzo.

18    64.    In September 2011, Glen Ivy's motivation for pressuring Ms. Apuzzo into

19 the Salon Director position became apparent. The Salon Director position Glen Ivy

20 attempted to force Ms. Apuzzo into and couched as a "promotion," was formally

21 eliminated by the company in or around early September 2011.

22    65.    On September 13, 2011 Ms. Apuzzo wrote an email to Stier requesting

23 clarification of which items sold in the salons qualified for her 3.5% override

24 commission, as she believed certain items were being improperly excluded from the

25 calculations of her commissions.

26    66.    On September 14, 2011, just one day after Ms. Apuzzo's letter to Stier

27 asking for clarification regarding her pay, Root sent Ms. Apuzzo a memorandum

28 formally eliminating the Corporate Skincare Education Coordinator position Ms. Apuzzo

15

COMPLAINT FOR DAMAGES

1   had held for several years.  He offered her yet another demotion.  His memorandum

2   indicated that she could remain at Glen Ivy in the position of Esthetician with a dual role

3   as the Brea Skincare Educator.  Her new position(s), as described in the memo, also

4   contained a new and convoluted salary and commission structure that resulted in a

5   drastic reduction in her salary.

6        67.    In the days that followed, Ms. Apuzzo sent several emails to Root and Stier

7   seeking clarification of the salary structure and her career options with Glen Ivy.

8        68.    In response, on September 20, 2011 Root sent Ms. Apuzzo an email

9   refusing to estimate what range of pay she could expect, and set forth her options at Glen

10  Ivy: accept the lesser position offered, at lesser pay, or resign.

11       69.    On September 23, 2011 Stier responded to Ms. Apuzzo's September 13,

12  2011 email requesting clarifications on how her commissions were calculated.  Stier

13  informed her that Glen Ivy had properly excluded the sales of certain products when

14  calculating the 3.5% override commission she was paid.  Ms. Apuzzo responded in an

15  email to Glen Ivy that she believed excluding those products from the calculation of her

16  commissions was improper given her hard work over the years to drive the sales of those

17  products.

18  *In Late September 2011, Glen Ivy Retaliates, Offers Ms. Apuzzo a Severance*

19  *Agreement in Exchange for Dismissal of her DFEH Complaint, and Demotes Her.*

20       70.    In retaliation for filing her DFEH complaint and lodging her concerns that

21  she had not been properly paid since 2009, Root offered Ms. Apuzzo a severance

22  agreement on September 27, 2011 which called for her resignation on September 30,

23  2011.  In the same breath, Root expressed gratitude for all she had accomplished at Glen

24  Ivy, but proposed that Ms. Apuzzo resign from her position and waive all rights to

25  against Glen Ivy, in exchange for a one-time lump sum payment of $22,500.  Particularly

26  troubling, Glen Ivy offered Ms. Apuzzo the lump sum payment in exchange for the

27  dismissal of her DFEH Complaint:

28

16

COMPLAINT FOR DAMAGES

"You have filed a complaint (Case No. E201112 H-1075-00) with the Department of Fair Employment and Housing against Glen Ivy alleging violations of the law.  In return for the severance pay set forth above, you agree to withdraw that complaint, to inform the DFEH in writing that you do not wish to pursue that complaint and to otherwise cooperate with Glen Ivy in effecting the dismissal of that complaint including signing any agreement provided by the DFEH to effect the complaint's dismissal."

71.    Having no other means to support her family or provide health insurance for herself, Ms. Apuzzo turned down the severance offer and reluctantly took a demotion on September 30, 2011.  She became an Esthetician, providing salon services to clients directly, a position she hadn't held in many years.  She would be called on as Brea's Skin Care Educator "as needed."  However, neither Glen Ivy, nor Ms. Apuzzo expected that she would be called on to perform any duties in that role.

72.    On October 3, 2011 Ms. Apuzzo sent an email to Root in which she requested, among other things, that the pay and job description of her new role be clarified.  She was particularly concerned with the dates from which sales figures would be calculated to hold her accountable for meeting sales goals.  For example, she questioned whether it would make sense for her to sign a job description that would require her to meet a certain sales goal by the end of 2011, when she would have only worked in her new position for 2 months in 2011.  She also inquired as to what method would be used to hold her accountable to the sales goals set forth by Glen Ivy, as the description of the methodology was not clear from the job description and other documents she was being asked to sign.  It also was not clear whether Ms. Apuzzo as a more senior esthetician, would receive priority when Glen Ivy booked clients for services.  This was important to Ms. Apuzzo because returning to the role of esthetician would mean competing for clients for commissions.

73.    On October 6, 2011 Root responded with an email arguing that no confusion should exist regarding Ms. Apuzzo's job description or accountability

17

1  standards.  Root directed that she should just sign the documents like every other

2  Esthetician does.

3        74.    Since Stier and Root would not change the dates during which sales figures

4  would be calculated to assess whether she was meeting sales goals, to reflect that she

5  would have only been in the esthetician position beginning in October 2011, it appeared

6  that they were attempting to force her to sign a job description which would hold her

7  accountable for goals meant for someone who had filled the position for the entire year

8  of 2011.  This would give Stier and Root further reason to terminate her when she failed

9  to meet the goals.

10       75.    In October 2011 Root and Stier also retroactively removed certain products

11  from her past and present commission schedule.  They denied her payment for

12  commissions on the sale of products which she had a role in driving sales for, beginning

13  in 2009.  Stier and Root now claimed certain products were never part of the list of

14  products for which Glen Ivy agreed she would receive commissions.

15  ***Ms. Apuzzo is Forced to Leave Glen Ivy.***

16       76.    Finally, on October 28, 2011, Ms. Apuzzo was driven to leave Glen Ivy.  In

17  an email to Stier and Root Ms. Apuzzo cited the harassment, discrimination and

18  retaliation she was subjected to after announcing her pregnancy, taking CFRA and

19  FMLA leave, filing written complaints about her pay and harassment, discrimination and

20  retaliation.  Ms. Apuzzo had been made physically sick by the stress and uncertainty of

21  her position.  She wrote about this to Root and communicated to them that she could no

22  longer carry out her job duties because the environment had become too stressful,

23  harassing, discriminatory, and retaliatory and her health and that of her baby were

24  jeopardized.

25       77.    After Ms. Apuzzo had stepped into the Esthetician position, she was

26  emotionally and physically devastated.  She was once again, "back on the books," taking

27  clients and sales opportunities from her fellow estheticians whom she once supervised.

28

18

1 | They all questioned, "What are you doing here?  You used to be our supervisor."  Ms.
2 | Apuzzo had no answers for them.

3 |     78.    As an esthetician, Ms. Apuzzo had no guaranteed income or hours.  Before
4 | her maternity leave, she was at least guaranteed a base salary of $40,000.  Now she did
5 | not even have that.  Root could not guarantee Ms. Apuzzo a number of hours of work per
6 | week or the range of commissions that she could earn.  He could not guarantee her that
7 | she would earn a salary at all.

8 |     79.    While she was being subjected to harassment, discrimination, retaliation,
9 | and a forced resignation, Ms. Apuzzo sought treatment for work-related stress and
10 | depression, which directly resulted from the harassment, retaliation, discrimination, and
11 | wrongful constructive discharge she was subjected to by Defendants.

12 |     80.    On or around October 19, 2011, Ms. Apuzzo received a right to sue letter
13 | from the DFEH.  A true and correct copy of that letter is attached hereto as Exhibit "2."

14 |     81.    On or around December 2, 2011, the EEOC issued Ms. Apuzzo a notice of
15 | right to sue letter which she received on December 12, 2011.  A true and correct copy of
16 | the notice of right to sue from the EEOC is attached hereto as Exhibit "3."

### FIRST CLAIM FOR RELIEF

### PREGNANCY DISCRIMINATION AND HARASSMENT

### [TITLE VII 42 USC §2000e et seq. Against Glen Ivy and Does 1-10]

20 |     82.    Plaintiff incorporates herein by reference all of the foregoing facts and
21 | allegations of this complaint as though fully set forth herein.

22 |     83.    Plaintiff Dana Apuzzo, while an employee at Glen Ivy, was discriminated
23 | against and harassed based on her pregnancy.  As detailed *supra* at ¶¶ 17-22 and 42-60,
24 | immediately after Ms. Apuzzo informed Glen Ivy, Stier and Root of her pregnancy, she
25 | was *inter alia* verbally abused, humiliated, told that her worth as an employee would
26 | diminish after having a baby, threatened that her job would be jeopardized if her
27 | pregnancy caused her to miss too many days of work, and was ridiculed about having a
28 | child out of wed lock.  After returning to Glen Ivy from her PDL, FMLA and CFRA

1   leave, she was demoted, had her pay reduced, her office relocated, her position

2   eliminated, offered a severance agreement and eventually forced to resign by Glen Ivy

3   and the individual Defendants.

4          84.    Discrimination on the basis of pregnancy, childbirth, or related medical

5   conditions is treated as sex discrimination under Title VII, 42 USC §2000e(k).  Federal

6   law prohibiting harassment is derived from Title VII of the Civil Rights Act.  Sex

7   harassment as that endured by Ms. Apuzzo is actionable as discrimination on the basis of

8   sex where as here it was so severe and pervasive that it altered the terms and conditions

9   of Ms. Apuzzo's employment and created an abusive work environment.  Ms. Apuzzo

10  was ridiculed and harassed prior to her maternity leave, and upon her return to Glen Ivy,

11  she was further harassed, demoted, forced into a position and job she did not want, had

12  her salary reduced, relocated, had her position eliminated, offered a severance

13  agreement, and she was eventually forced to resign due to the refusal of management at

14  Glen Ivy to address the unlawful behavior of Defendants.

15         85.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

16  has suffered and will continue to suffer pain and suffering; anxiety; embarrassment;

17  humiliation; loss of self-esteem; depression; severe mental anguish and emotional

18  distress; loss of earnings and other employment benefits.  Plaintiff is therefore entitled to

19  general and compensatory damages in an amount according to proof at trial.

20         86.    The conduct of Defendant and/or their agents/employees, as described

21  herein, was malicious and oppressive and done with a willful and conscious disregard for

22  Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant.

23                        **SECOND CLAIM FOR RELIEF**

24      **RETALIATION FOR COMPLAINING ABOUT DISCRIMINATION AND**

25                            **HARASSMENT**

26      **[TITLE VII 42 USC §2000e et seq. Against Glen Ivy and Does 1-10]**

27         87.    Plaintiff incorporates herein by reference all of the foregoing facts and

28  allegations of this complaint as though fully set forth herein.

COMPLAINT FOR DAMAGES

83.    Plaintiff Dana Apuzzo, while an employee at Glen Ivy, was discriminated against and harassed based on her pregnancy, and was retaliated against when she complained about the harassment and discrimination.  As detailed supra at ¶¶ 17-22 and 42-60, immediately after Ms. Apuzzo informed Glen Ivy, Stier and Root of her pregnancy, she was *inter alia* verbally abused, humiliated, told that her worth as an employee would diminish after having a baby, threatened that her job would be jeopardized if her pregnancy caused her to miss too many days of work, and was ridiculed about having a child out of wed lock.  After returning to Glen Ivy from her PDL, FMLA and CFRA leave, she was demoted by being forced into a new position with less pay.  She complained of the discrimination, harassment and retaliation by letter to Glen Ivy's Human Resources Department on April 7, 2011.  Ms. Apuzzo also filed a complaint of discrimination, harassment and retaliation with the DFEH on August 29, 2011.  Immediately following her complaints and her cooperation in Glen Ivy's and the DFEH's investigations of her complaints, her hours were reduced, her office relocated, her position eliminated, she was offered a severance agreement in exchange for dismissal of her DFEH complaint, and was eventually forced to resign by Glen Ivy and the individual Defendants.

84.    Retaliation for complaints of harassment and discrimination is actionable under Title VII.  Ms. Apuzzo was subjected to materially adverse employment actions by her employer because she lodged complaints of sex harassment and discrimination on the basis of her pregnancy on April 7, 2011 and August 29, 2011.  Glen Ivy's actions in forcing her into a new position with less pay, reducing her hours, relocating her office multiple times, taking away her company-issued laptop, demoting her then eliminating that position, offering her a severance agreement in exchange for dismissal of her DFEH complaint, were so severe that Ms. Apuzzo was dissuaded from making or supporting further complaints of harassment and discrimination and she was forced to instead resign her employment.

21

85.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss of self-esteem; depression; severe mental anguish and emotional distress; loss of earnings and other employment benefits.  Plaintiff is therefore entitled to general and compensatory damages in an amount according to proof at trial.

86.     The conduct of Defendant and/or their agents/employees, as described herein, was malicious and oppressive and done with a willful and conscious disregard for Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE FMLA

### [29 USC §2601 et seq. Against Defendant Glen Ivy and Does 1-10]

88.     Plaintiff incorporates herein by reference all of the foregoing facts and allegations of this complaint as though fully set forth herein.

89.     Defendants are employers covered by the Family and Medical Leave Act pursuant to 29 USC §2601 et seq.

90.     In October 2010, Plaintiff was entitled to leave under the Family and Medical Leave Act, pursuant to 29 CFR 825.114.

91.     Defendants engaged in prohibited conduct under the FMLA by interfering with, restraining or denying Plaintiffs' rights provided under the Act.

92.     Defendants' action foreclosed Plaintiff's rights under the FMLA, including but not limited to the right to be returned to her position and the right to be free from threats and harassment, discrimination and retaliation for exercising her rights under the law.

93.     Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

94.     As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to suffer loss of earnings and other employment benefits, along with consequential financial damages and losses,

COMPLAINT FOR DAMAGES

1  humiliation, emotional distress, and mental and physical injuries, pain and anguish, all to

2  her damage in an amount according to proof.

### FOURTH CLAIM FOR RELIEF

**PREGNANCY DISCRIMINATION AND UNLAWFUL SEXUAL HARASSMENT**

**[CAL. GOV. CODE §§ 12940(a) and (j), 12926(q), 12945(a)-(b), and California**

**Public PolicyAgainst all Defendants and Does 1-10]**

7  95.    Plaintiff incorporates herein by reference all of the foregoing facts and

8  allegations of this complaint as though fully set forth herein.

9  96.    Plaintiff was an employee at Glen Ivy, and Defendants Glen Ivy, Stier and

10  Root subjected her to discrimination and harassment based on her sex, pregnancy, the

11  birth of her child, and medical conditions related to her pregnancy and the birth of her

12  child, causing a hostile, abusive, and offensive, work environment.

13  97.    The harassing and discriminatory conduct including but not limited to

14  humiliation, being told that her worth as an employee would diminish after having a

15  baby, threats that her job would be jeopardized if her pregnancy caused her to miss too

16  many days of work, being ridiculed about having a child out of wed lock, being forced

17  into a position for less pay, being reassigned to a new supervisor, being carefully

18  monitored,  having her workspace relocated numerous times, having her company-issued

19  laptop taken away, being offered a severance agreement, having her position eliminated,

20  and having her hours reduced was so severe and pervasive that a reasonable pregnant

21  woman in Ms. Apuzzo's circumstances would have considered the work environment to

22  be hostile or abusive.

23  98.    Plaintiff's pregnancy, and birth of her child were motivating reasons for the

24  harassment and adverse employment actions taken against her.  Plaintiff did consider the

25  environment hostile, abusive and discriminatory and Root and Stier participated in the

26  harassing and discriminatory conduct.  Defendant Glen Ivy has failed to reprimand

27  and/or discipline Individual Defendants and/or take other forms of remedial action

28

23

1   regarding Individual Defendants to prevent the sex discrimination and sexual harassment

2   from occurring.

3       99.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

4   has suffered and will continue to suffer pain and suffering; anxiety; embarrassment;

5   humiliation; loss of self-esteem; depression; severe mental anguish and emotional

6   distress; loss of earnings and other employment benefits.  Plaintiff is therefore entitled to

7   general and compensatory damages in an amount according to proof at trial.

8       86.    The conduct of Defendant and/or their agents/employees, as described

9   herein, was malicious and oppressive and done with a willful and conscious disregard for

10  Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant.

11                          **FIFTH CLAIM FOR RELIEF**

12          **MARITAL STATUS DISCRIMINATION AND HARASSMENT**

13      **[CAL. GOV. CODE §§12940 (a) and (h) Against Root, Glen Ivy and Does 1-10]**

14      100.   Plaintiff incorporates herein by reference all of the foregoing facts and

15  allegations of this complaint as though fully set forth herein.

16      101.   Plaintiff was an employee at Glen Ivy, and Defendants Glen Ivy and Root

17  subjected her to discrimination and harassment based on her marital status.

18      102.   The harassing and discriminatory conduct including but not limited to

19  humiliation, being asked if she was planning to get married in light of her pregnancy,

20  having Root sing to her, "If he likes it then he better put a ring on it" while waiving his

21  ring finger hand in the air, having to explain to Root why she was not married, having

22  Root tell her he had a "talk" with other pregnant and unmarried women at Glen Ivy,

23  feeling ridiculed for being out of wed-lock, being forced into a position for less pay,

24  being reassigned to a new supervisor, being carefully monitored,  having her workspace

25  relocated numerous times, having her company-issued laptop taken away, being offered

26  a severance agreement, having her position eliminated, and having her hours reduced,

27  was so severe and pervasive that a reasonable pregnant woman in Ms. Apuzzo's

28  circumstances would have considered the work environment to be hostile or abusive.

COMPLAINT FOR DAMAGES

103.   Plaintiff's status as a pregnant and unmarried woman were motivating reasons for the harassment and adverse employment actions taken against her by Defendants.  Plaintiff did consider the environment hostile, abusive and discriminatory and Root participated in the harassing and discriminatory conduct.  Defendant Glen Ivy has failed to reprimand and/or discipline Root and/or take other forms of remedial action regarding Root to prevent the marital status discrimination and harassment from occurring.

104.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss of self-esteem; depression; severe mental anguish and emotional distress; loss of earnings and other employment benefits.  Plaintiff is therefore entitled to general and compensatory damages in an amount according to proof at trial.

86.   The conduct of Defendant and/or their agents/employees, as described herein, was malicious and oppressive and done with a willful and conscious disregard for Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant.

## SIXTH CLAIM FOR RELIEF

### RETALIATION FOR COMPLAINTS OF HARASSMENT AND DISCRIMINATION

### [California Government Code § 12940(h) against Glen Ivy and Does 1-10]

105.   Plaintiff incorporates herein by reference all of the foregoing facts and allegations of this complaint as though fully set forth herein.

106.   Plaintiff was an employee at Glen Ivy, and Defendants Glen Ivy and Root retaliated against her for complaining on April 7, 2011 to Glen Ivy's Human Resources, and on August 29, 2011 to the DFEH about among other things discrimination and harassment against her at Glen Ivy.

107.   Following Plaintiff's April 7, 2011 complaint by letter, and formal filing of a complaint with the DFEH on August 29, 2011, as well as her cooperation in both investigations, Plaintiff was subjected to retaliatory actions which include but are not

1  limited to being forced into a position for less pay, being reassigned to a new supervisor,

2  being carefully monitored, having her workspace relocated numerous times, having her

3  company-issued laptop taken away, being offered a severance agreement, having her

4  position eliminated, and having her hours and pay reduced.  Stier, Root and Glen Ivy

5  engaged in this retaliatory overall course of conduct which taken as a whole, materially

6  and adversely affected the terms and conditions of Ms. Apuzzo's employment.

7      108.   Plaintiff's complaints about pregnancy discrimination, harassment and

8  retaliation as well as her cooperation in the respective investigations, were motivating

9  reasons for the harassment and adverse employment actions taken against her by

10  Defendants.

11      109.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

12  has suffered and will continue to suffer pain and suffering; anxiety; embarrassment;

13  humiliation; loss of self-esteem; depression; severe mental anguish and emotional

14  distress; loss of earnings and other employment benefits.  Plaintiff is therefore entitled to

15  general and compensatory damages in an amount according to proof at trial.

16      86.   The conduct of Defendant and/or their agents/employees, as described

17  herein, was malicious and oppressive and done with a willful and conscious disregard for

18  Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant.

19                    **SEVENTH CLAIM FOR RELIEF**

20  **RETALIATION AND INTERFERENCE WITH PROTECTED LEAVE RIGHTS**

21                         **UNDER THE CFRA**

22   **[Gov. Code §12945.2(a) and (l) Against Defendant Glen Ivy and Does 1-10]**

23      110.   Plaintiff incorporates herein by reference all of the foregoing facts and

24  allegations of this complaint as though fully set forth herein.

25      111.   Plaintiff attempted to take a  necessary pregnancy leave due to a serious

26  health condition, Government Code §12945.2(a) (California Family Rights Act or

27  "CFRA"), starting on October 5, 2010.

28

COMPLAINT FOR DAMAGES

112.   Plaintiff had, at the time of her leave, almost nine years' service  with her employer, Glen Ivy.  Further, she had provided at least 1250 hours of service during the previous 12-month period.

113.   Plaintiff provided Glen Ivy with notice, as well as a reasonably specific written certification from her doctor, as soon as reasonably possible following medical advice to begin leave for her pregnancy.

114.   Defendant Glen Ivy, by and through its/their agents and others, interfered with Plaintiff's medical leave by threatening to demote Plaintiff, verbally abusing Plaintiff, and reduce Plaintiff's pay, among other things.

115.   Defendant Glen Ivy, by and through its/their agents and others, retaliated against Plaintiff for taking her protected medical leave by demoting Plaintiff, reducing Plaintiff's pay, among other things.

116.   Glen Ivy further ratified the foregoing conduct by the Individual Defendants by endorsing the retaliatory discipline of Plaintiff, and by justifying its treatment of Plaintiff.

117.   As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to suffer loss of earnings and other employment benefits, along with consequential financial damages and losses, humiliation, emotional distress, and mental and physical injuries, pain and anguish, all to her damage in an amount according to proof.

118.   In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of the rights of Plaintiff, and Plaintiff is therefore entitled to punitive damages in an amount according to proof.

119.   Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof.

/ / /

/ / /

/ / /

27

# EIGHTH CLAIM FOR RELIEF

## FAILURE TO PREVENT HARASSMENT AND RETALIATION

### [VIOLATION OF CAL. GOV. CODE §§ 12940(j) & (k) Against Defendant Glen Ivy and Does 1-10]

120.   Plaintiff incorporates herein by reference all of the foregoing facts and allegations of this complaint as though fully set forth herein.

121.   In violation of California Government Code §§ 12940(j) & (k) Defendant Glen Ivy failed to take all reasonable steps necessary to prevent pregnancy discrimination and harassment from occurring, and retaliation against employees for opposing and complaining about unlawful practices.

122.   Plaintiff was harassed, discriminated, and retaliated against because of her pregnancy, childbirth, marital status and because she took protected leave.  Plaintiff was also retaliated against for complaining to Glen Ivy on April 7, 2011 and to the DFEH and EEOC on August 29, 2011 about discrimination, harassment and retaliation.  Plaintiff was further retaliated against for cooperating in the investigations of Glen Ivy, the DFEH, and the EEOC.

123.   At all relevant time periods Defendant Glen Ivy failed to make an adequate response and investigation into the conduct of Defendant Glen Ivy and any of its agents/employees and the aforesaid pattern and practice.  During all relevant time periods, Defendant Glen Ivy failed to provide any or adequate training, education, and information to their personnel and most particularly to management and supervisory personnel with regard to policies and procedures regarding sex discrimination, sexual/gender harassment, and retaliation for complaining of or resisting sex discrimination and sexual/gender harassment and retaliation.  The conduct set forth herein, violated Plaintiff's rights under *inter alia* California Government Code § 12940 (a) (h), (I), (j) and (k).

124.   As a direct and proximate result of Defendants' unlawful conduct, and failure to prevent discrimination, harassment, and retaliation, Plaintiff has suffered and

COMPLAINT FOR DAMAGES

1    will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss of

2    self-esteem; depression; severe mental anguish and emotional distress; loss of earnings

3    and other employment benefits.  Plaintiff is therefore entitled to general and

4    compensatory damages in an amount according to proof at trial.

5         86.    The conduct of Defendant and/or their agents/employees, as described

6    herein, was malicious and oppressive and done with a willful and conscious disregard for

7    Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant.

8                          **NINTH CLAIM FOR RELIEF**

9             **WRONGFUL CONSTRUCTIVE DISCHARGE**

10               **IN VIOLATION OF PUBLIC POLICY**

11          **[Against all Defendant Glen Ivy and Does 1-10]**

12         125.    Plaintiff incorporates herein by reference all of the foregoing facts and

13    allegations of this complaint as though fully set forth herein.

14         126.    At all relevant times until Plaintiff was constructively discharged on

15    October 28, 2011, from her employment at Glen Ivy.

16         127.    As a result of the actions of Defendant Glen Ivy and/or its agents/employees

17    as alleged herein, Plaintiff was constructively terminated in violation of the public

18    policies of the United States and the State of California including Title VII, the

19    Pregnancy Discrimination Act, and the California Fair Employment and Housing Act.

20    Ms. Apuzzo was discriminated against and harassed on the basis of her pregnancy, and

21    complained about discrimination, harassment, and retaliation to Defendant Glen Ivy on

22    April 7, 2011 and to the DFEH and EEOC on August 29, 2011.  Ms. Apuzzo was

23    subjected to discriminatory and retaliatory working conditions that violated the public

24    policy of the United States and California's policies against retaliation for engaging in

25    the protected conduct of reporting gender discrimination contained in California

26    Government Code §12940(h).

27         128.    At all times relevant herein, Glen Ivy intentionally created or knowingly

28    permitted employment working conditions that were so intolerable or aggravated that a

COMPLAINT FOR DAMAGES

1 | reasonable employer would realize that a reasonable person in Ms. Apuzzo's position
2 | would have had no reasonable alternative except to resign. These conditions included,
3 | but were not limited to, verbal abuse regarding her pregnancy, humiliation, being told
4 | that her worth as an employee would diminish after having a baby, threats that her job
5 | would be jeopardized if her pregnancy caused her to miss too many days of work, being
6 | ridiculed about having a child out of wed lock, being forced into a new position with less
7 | pay, being reassigned without explanation to the supervision of someone outside of her
8 | department, having her hours reduced, having her office and workspace relocated
9 | multiple times without explanation, having her company-issued laptop taken, the
10 | elimination of her position, being offered a severance agreement in exchange for
11 | dismissal of her DFEH complaint, demoted to the position of esthetician with no
12 | guaranteed work hours and benefits.

13 |     129. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff
14 | has suffered and will continue to suffer pain and suffering; anxiety; embarrassment;
15 | humiliation; loss of self-esteem; depression; severe mental anguish and emotional
16 | distress; loss of earnings and other employment benefits. Plaintiff is therefore entitled to
17 | general and compensatory damages in an amount according to proof at trial.

18 |     130. The conduct of Defendant and/or their agents/employees, as described
19 | herein, was malicious and oppressive and done with a willful and conscious disregard for
20 | Plaintiff's rights entitling Plaintiff to an award of punitive damages from Defendant.

21 | **TENTH CLAIM FOR RELIEF**
22 | **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
23 | **[Against all Defendants and Does 1-10]**

24 |     131. Plaintiff incorporates herein by reference all of the foregoing facts and
25 | allegations of this complaint as though fully set forth herein.

26 |     132. The conduct of defendants, and each of them, as alleged above, was
27 | outrageous and outside the normal scope of the employment relationship. Defendants,
28 | and each of them, knew that their conduct would result in Plaintiff's severe emotional

30

distress, and this conduct was perpetrated by defendants, and each of them, with the intent to inflict, or with reckless disregard of the probability of inflicting humiliation, mental anguish, and severe emotional distress upon plaintiff.  Such conduct did, in fact, cause plaintiff severe emotional distress.

133.   As a direct and proximate result of defendants' unlawful and outrageous conduct involving discrimination, harassment and retaliation, plaintiff has suffered and will continue to suffer severe physical and mental distress, an inability to continue to nurse her newborn, humiliation, embarrassment, anxiety, depression, sleeplessness, problems with concentration, loss of earnings, loss of other employment benefits, medical expenses, lack of professional opportunities and advancement, and other general and special damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

134.   For compensatory damages, including lost past and future wages, employee benefits, medical bills, mental and emotional distress, and other special and general damages according to proof but in excess of the jurisdictional threshold of this court;

135.   For an award of interest, including prejudgment interest, at the legal rate;

136.   For punitive damages in an amount to be proven at trial on all causes of action for which such damages are recoverable;

137.   For any other applicable statutory penalties;

138.   For such equitable relief as may be appropriate, including injunctive relief;

139.   For reasonable attorney's fees pursuant to Government Code §12965(b), California Code of Civil Procedure §1021.5, and all other applicable statutes;

140.   For costs of suit incurred herein; and

141.   For such other and further relief as this court may deem just and proper.

/ / /

/ / /

/ / /

31

COMPLAINT FOR DAMAGES

1                     **DEMAND FOR JURY TRIAL**

2         Plaintiff Dana Apuzzo hereby demands a trial by jury of all claims for relief for

3 which a jury trial is available as a matter of right.

4

5 DATED: March 1, 2012              Respectfully submitted,

6                           HADSELL STORMER KEENY

7                              RICHARDSON & RENICK, LLP

8

9                      By

10                           Cindy Panuco
                      Attorneys for Plaintiff Dana Apuzzo

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

Apuzzo - Complaint for Damages

Exh. 1

\* \* \* **EMPLOYMENT** \* \*

**COMPLAINT OF DISCRIMINATION UNDER**
**THE PROVISIONS OF THE CALIFORNIA**
**FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #  E 201112 H-0175-00-rse

EEOC #  37A B1 07783

If dual-filed with EEOC, this form may be affected by the Privacy Act of 1974.

**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING and EEOC**

COMPLAINANT'S NAME (indicate Mr. or Ms.)
APUZZO, Dana (Ms.)

| ADDRESS | | | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|---|---|
| 11257 Terra Vista Parkway E | | | (951) 833-4994 |

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| Rancho Cucamonga | CA | 91730 | San Bernardino | 071 |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
Glen Ivy Spa

| ADDRESS | | | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|---|---|
| 2500 Glen Ivy Road | | | |

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| Corona | CA | 92883 | San Bernardino | 071 |

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES))
☐ RACE  ☒ SEX  ☐ DISABILITY  ☐ RELIGION  ☐ NATIONAL ORIGIN/ANCESTRY  ☐ DENIAL OF FAMILY/MEDICAL LEAVE  ☐ SEXUAL ORIENTATION
☐ COLOR  ☐ AGE  ☐ MARITAL STATUS  ☐ MEDICAL CONDITION (cancer or genetic characteristics) ☒ OTHER (SPECIFY) **RETALIATION**

| NO. OF EMPLOYEES/MEMBERS | DATE MOST RECENT OR CONTINUING DISCRIMINATION | RESPONDENT CODE |
|---|---|---|
| 40 | TOOK PLACE (month, day, and year) April 30, 2011 | 72 |

THE PARTICULARS ARE:

I. On 3/26/11 I was demoted. On or about 4/11 my hours were reduced. At the time of the demotion I was a Skin Care Educator Coordinator, earning approximately $70,000.00 a year. I was hired 10/12/02.

II. On or around 3/26/11 Cristen Stier, CFO, COO, Human Resources and IT asked if I would accept a promotion to "Salon Director", I declined the offer.

III. I believe I was demoted because of my pregnancy which is discrimination on the basis of my sex, female. I further believe that I was subsequently retaliated against for opposing the discriminatory acts by having my hours reduced. My beliefs are based on the following:

   A. On or about 4/10 I notified Ms. Stier of my pregnancy. She made inappropriate comments regarding pregnancy on this day. (Details on file with DFEH) I left on maternity leave on 10/10.

   B. On 3/15/11 I returned from maternity leave with no medical restrictions.

   C. On 3/26/11 I was approached by Ms. Stier with what she said was a promotion. The promotion to Salon Director was actually a demotion since the pay was $10,000.00 less than what I earned as a Skin Care Educator Coordinator.

   D. On 4/7/11 I wrote a letter to Human Resources that I was being discriminated against for being a women and having a baby and being retaliated against for taking maternity and bonding leave and for providing a statement about threats made by Ms. Stier.

   E. On or about 4/11 my hours were reduced to 36 hours. Prior to my opposition the hours I worked were 36 to 40 hours.

Typed and Mailed for Signature August 15, 2011
☒ I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  8/29/2011

At  Rancho Cucamonga
City

COMPLAINANT'S SIGNATURE

RECEIVED
SEP 01 2011
DEPT OF FAIR EMPLOYMENT & HOUSING
BAKERSFIELD DISTRICT OFFICE

DFEH-300-01 (12/99)        B: YM:ps        DATE FILED:
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

P 1458

Apuzzo - Complaint for Damages

Exh. 2



STATE OF CALIFORNIA | State and Consumer Services Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
(800) 884-1684 | Videophone for the DEAF (916) 226-5285
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR

DIRECTOR PHYLLIS W. CHENG

October 19, 2011

DANA APUZZO
11257 Terra Vista Parkway E
Rancho Cucamonga, CA  91730

RE:     E201112H0175-00-rse/37AB107783
        APUZZO/GLEN IVY SPA

Dear DANA APUZZO:

## NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed on the basis of: Complainant Elected Court Action.

Please be advised that this recommendation has been accepted and the case has been closed effective October 17, 2011.

This letter is also your Right-To-Sue Notice.  According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under, and allege a violation of Government Code section 12948 which incorporates Civil Code sections 51, 51.7, and 54.  The civil action must be filed within one year from the date of this letter.  However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation.  If a settlement agreement has been signed resolving the complaint, it is likely that your right to file a private lawsuit may have been waived.

| HEADQUARTERS | BAKERSFIELD | FRESNO | LOS ANGELES | OAKLAND | SAN JOSE |
|---|---|---|---|---|---|
| 2218 Kausen Drive | 4800 Stockdale | 1277 E. Alluvial Avenue | 1055 West 7th Street | 1515 Clay Street | 2570 N. First Street |
| Suite 100 | Highway | Suite 101 | Suite 1400 | Suite 701 | Suite 480 |
| Elk Grove, CA 95758 | Suite 215 | Fresno, CA 93720 | Los Angeles, CA 90017 | Oakland, CA 94612 | San Jose, CA 95131 |
| (916) 478-7251 | Bakersfield, CA 93309 | (559) 244-4760 | (213) 439-6799 | (510) 622-2941 | (408) 325-0344 |
|  | (661) 395-2729 |  |  |  |  |

P 1924

Notice of Case Closure
Page Two

This case may be referred to the U.S. Equal Employment Opportunity Commission (EEOC) for further review.  If so, pursuant to Government Code section 12965, subdivision (d)(1), your right to sue will be tolled during the pendency of EEOC's review of your complaint.

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Mary L. Bonilla*

Mary Bonilla
Regional Administrator
Bakersfield District


cc:    Case File

James Odlum
Attorney
Mundell Odlum & Haws LLP
650 E Hospitality Lane Ste 470
San Bernardino, CA  92408

DFEH-200-08e (06/06)
HMORALEE

P 1925

## FILING A CASE IN COURT

Your case has been closed by the Department of Fair Employment and Housing (DFEH). Should you decide to bring a civil action on your own behalf in court in the State of California under the provisions of the California Fair Employment and Housing Act (FEHA) against the person, employer, labor organization or employment agency named in your complaint, below are resources for this.

*Note:* If a settlement agreement has been signed resolving the complaint, you might have waived the right to file a private lawsuit.

### Finding an Attorney

To proceed in Superior Court, you should contact an attorney. If you do not already have an attorney, the organizations listed below may be able to assist you:

The State Bar of California

The State Bar of California has a Lawyer Referral Services Program (LRS) which can be accessed through its Web site at www.calbar.ca.gov or by calling 1-866-442-2529 (within California) or 1-415-538-2250 (outside California).

Local Lawyer Referral Services

Your county may have a lawyer referral service. Check the Yellow Pages of your telephone book under "Attorneys."

### Filing in Small Claims Court

You may be able to file a claim in small claims court. For more information, you may contact:

California Department of Consumer Affairs (DCA)

The Department of Consumer Affairs has information regarding filing claims in small claims court located on its Web site at www.dca.ca.gov. Under its "Publications" tab you can access the "Locate the Small Claims Court Guide" on the left side of the page.

You may also order a free copy of "The Small Claims Court: A Guide to Its Practical Use" by contacting the DCA Publication Hotline at 1-866-320-8685 or 1-800-952-5210, or by writing to them at: Department of Consumer Affairs; Policy and Publications Development Office; 1625 North Market Blvd., Suite N-112; Sacramento; CA; 95834.

The State Bar of California

The State Bar of California has information on "Using the Small Claims Court" under the "Public Services" section of its Web site located at www.calbar.ca.gov.

DFEH-200-41 (04/09)

P 1926

Apuzzo - Complaint for Damages

# Exh. 3

EEOC Form 161-B (11/09)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: DANA APUZZO<br>11257 Terra Vista Parkway E<br>Rancho Cucamonga, CA 91730 | From: Los Angeles District Office<br>255 E. Temple St. 4th<br>Los Angeles, CA 90012 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 37A-2011-07783 | Karrie L. Maeda,<br>State & Local Coordinator | (213) 894-1100 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Olophius E. Perry,
District Director

December 2, 2011

*(Date Mailed)*

Enclosures(s)

cc:   GLEN IVY SPA
2500 Glen Ivy Road
Corona, CA 92883

P 1927

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## CV12- 1768 CBM (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Dan Stormer (#101967)/Anne Richardson (# 151541)
Cindy Pánuco (# 266921)
Hadsell Stormer Keeny Richardson & Renick, LLP
128 N. Fair Oaks Avenue,  Pasadena, CA  91103
Tel: (626) 585-9600/Fax:  (626) 577-7079

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DANA APUZZO

PLAINTIFF(S),

v.

GLEN IVY HOT SPRINGS, a corporation;
JIM ROOT, an individual; CRISTEN Stier, an
individual; and DOES 1 through 10; inclusive

DEFENDANT(S).

CASE NUMBER

CV 12 - 01768 CBM (DTBx)

SUMMONS

TO:   DEFENDANT(S): GLEN IVY HOT SPRINGS, a corporation;  JIM ROOT, an individual;
CRISTEN STIER, an individual; and DOES 1 through 10; inclusive

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, Anne Richardson _____, whose address is
HadsellStormerKeenyRichardsonRenick 128 N. Fair Oaks Ave., PasadenaCA 91103 ___. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

TERRY NAFISI
Clerk, U.S. District Court

Dated:  MAR - 1 2012

By: _____
L. MURRAY
Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>DANA APUZZO | **DEFENDANTS**<br>GLEN IVY HOT SPRINGS, a corporation; JIM ROOT, an individual; CRISTEN Stier, an individual; and DOES 1 through 10; inclusive |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Hadsell Stormer Keeny Richardson & Renick, LLP<br>128 N. Fair Oaks Avenue, Pasadena, California 91103<br>Tel: (626) 585-9600/Fax: (626) 577-7079 | Attorneys (If Known)<br>Dan Stormer, Esq. (S.B. #101967);  dstormer@hadsellstormer.com<br>Anne Richardson, Esq. (S.B. # 151541);  arichardson@hskrr.com<br>Cindy Pánuco, Esq. (S.B. # 266921);  cpanuco@hskrr.com |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES -** For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No      ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Title VII (42 U.S.C. 2000e);  FMLA (29 U.S.C. 2601)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☑ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV  12  -  01768  (DTBx)

**FOR OFFICE USE ONLY:**   Case Number: _____

CBM

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

MAR -1 2012

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
   ☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
   ☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date March 1, 2012

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
   or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
   but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969.  (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |